1
2
3
4
5
6
7
8            IN THE UNITED STATES DISTRICT COURT
9         FOR THE NORTHERN DISTRICT OF CALIFORNIA
10

**United States District Court**
**For the Northern District of California**

11   PAUL BENSI. et al.,                        No. C 11-03978 CRB

12          Plaintiffs,                     **ORDER RE ATTORNEYS' FEES**

13      v.

14   EL CAMINO HOSPITAL,

15          Defendant.
                                    /
16

17        The Court granted Defendant's Motion for Summary Judgment on February 24, 2012.

18   Dkt. 37.  The Court ordered the parties to provide supplemental briefing on whether

19   attorneys' fees were warranted, and held a hearing on Friday, April 6, 2012.  Dkt. 47.  While

20   the Court finds this to be a close question, it holds the balance tips in favor of DENYING the

21   motion for attorneys' fees.

22   **I.      FACTUAL BACKGROUND**

23        The parties are familiar with the factual background of this case.

24   **II.     LEGAL STANDARD**

25        ERISA section 502(g)(1), 29 U.S.C. § 1132(g)(1), provides that the Court, in its

26   discretion, <u>may</u> award reasonable attorneys' fees and costs to either party in an action by a

27   fiduciary to enforce the plan.  "A fees claimant must show 'some degree of success on the

28   merits' before a court may award attorney's fees under § 1132(g)(1)."  <u>Hardt v. Reliance</u>

     <u>Standard Life Ins. Co.</u>, 130 S. Ct. 2149, 2158-59 (2010) (quoting <u>Ruckelshaus v. Sierra Club,</u>

United States District Court
For the Northern District of California

463 U.S. 680, 694 (1983)).  The court considers the following "Hummell" factors in deciding whether to award fees: (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of fees; (3) whether the award of fees would deter others; (4) whether the parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or solve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions.  See Simonia v. Glendale Nissan/Infiniti Disability Plan, 608 F.3d 1118, 1121 (9th Cir. 2010) (citing Hummell v. S.E. Rykoff & Co., 634 F.2d 446, 453 (9th Cir. 1980)).

## III.    DISCUSSION

The Hospital argues the Hummell factors counsel in favor of fees.  It is asking for fees in the amount of $92,139.75, and expenses in the amount of $2,322.73.  While this is a close question, the Court does not believe the factors tip strongly in favor of fees; thus, the Court DENIES the motion for attorneys' fees.  The Court will examine the factors in turn.

### A.    Factor 1 – Bad Faith

Generally, the Hospital argues the Trust Fund is attempting in bad faith to expand the scope of the Hospital's required contributions to the Fund beyond what is provided in the CBA and Trust Agreement.  The Hospital argues that since this position is in conflict with the language of the agreements, it demonstrates bad faith.  See Paddack v. Morris, 783 F.2d 844, 847 (9th Cir. 1986) (upholding award of fees when district court found trustees' efforts to expand audit beyond territorial limits imposed on the trust plan constituted bad faith).

Preliminarily, the Hospital points to the Trust Fund and Union's general litigation activities to demonstrate bad fath.  The Trust Fund is involved in other litigation attempting to compel audits.   The Hospital includes in its first supplemental filing a long list of other cases that the Union or Trust Fund has been involved with in the past decade, but this includes cases that have nothing to do with ERISA issues or collective bargaining agreements.  That the parties engage in litigation generally is not an indication of bad faith.  For example, one of the cases is where the Trust Fund served as lead counsel in a Securities Act case.  See In re Elec. Arts, Inc. Sec. Litig., No. 05-1219, 2006 WL 27210, (N.D. Cal.

Jan. 5, 2006).  This is exactly the type of case that the Court wants institutional investors to participate in, and should not be held against the Fund.

Moreover, the Hospital points to cases where analysis by the Lindquist auditors provides the basis for a union or trust fund to bring litigation.  See Supp. Memo at 7 (listing cases).  This does not appear directly relevant to the Trust Fund's lack of good faith.  Moreover, it is not surprising that the results of auditors sometimes lead to enforcement litigation.  Finally, some of these citations demonstrate that the analysis lead to recovery of funds owed, certainly not demonstrating bad faith.  See, e.g., Locals 302 & 612 of the Int'l Union of Operating Eng'rs Constr. Indus. Health & Sec. Fund v. Gill, 737 F. Supp. 2d 1304, 1311 (W.D. Wa. 2010) (awarding costs and fees to trust funds when employer failed to provide required documentation to Lindquist auditors).  Thus, the Court does not find this information persuasive.

The Hospital then argues bad faith is evident from the Trust Fund's refusal to articulate a theory of relevance during the months of correspondence and the position taken regarding subcontracting.  The Court is most troubled by the Trust Fund's refusal to articulate a theory of relevance for the cash disbursement journals.

The cash disbursement journals are records reflecting all payments made to all vendors of the Hospital.  Ramsell Decl. ¶ 7.  The journals include the hundreds of invoices the Hospital processes each week for a variety of products and services with no relevance to the Hospital's mechanical and electronic equipment or work performed by the bargaining unit.  Id.  For example, the journals reflect payments for office and medical supplies; utilities such as PG&E; medical equipment; contracted laundry, custodial and information technology services; professional services performed by legal, consulting and accounting firms; and employee benefit premiums.  Id.  The journals also include payments for work performed by contractors, such as medical equipment service vendors and construction firms.  Id.

The Hospital believed these records were of no apparent significance to the audit per the CBA, and thus, requested that the auditors put their request for the journals in writing.  Ramsell Decl. ¶ 8.  The auditors subsequently requested by letter dated June 29, 2010 all

United States District Court
For the Northern District of California

1  cash disbursement journals for the first quarter of 2010, the third quarter of 2008, and the

2  second quarter of 2007.  In the alternative, the auditors asserted that a complete vendor list

3  would be acceptable.  Johnston Decl. Ex. C.  This letter appeared to be a standard letter

4  issued to multiple employers, without regard to whether the requests therein were applicable

5  to the Hospital.  See Ramsell Decl. ¶ 3.  The Hospital and the Fund then exchanged multiple

6  rounds of correspondence regarding the relevancy of the cash disbursement journals.

7  Johnston Decl. Exs. D-F; Reis Decl. (dkt. 28) Exs. A-D.  The responses of the Trust Fund are

8  troubling to the Court.

9       In its July 13, 2010 letter, for instance, the Hospital asked the Trust Fund to justify

10  why the journals were relevant or necessary to the audit.  Johnston Decl. Ex. D.  In response,

11  counsel for the Fund asserted the journals "were necessary to determine whether El Camino

12  Hospital is in compliance with its contributions obligation" and that "Federal law requires

13  that El Camino Hospital produce the books and records requested by the Trust Funds."  Id.

14  Ex. E.

15       The Hospital again requested the Fund's position on why the journals were relevant or

16  necessary to the audit in a September 27, 2010 letter.  Reis Decl. Ex. A.  The Fund asserted

17  that "[t]he Trust Fund's auditors determined that the cash disbursement journals were

18  relevant and necessary . . . .  As such, they are entitled to the requested documents."  Id. Ex.

19  B.  The Hospital made a third request for an explanation by letter dated January 14, 2011.  Id.

20  Ex. C.  The Fund's April 13, 2011 response reiterated that the "auditors have determined [the

21  journals] are necessary to complete the audit" and "[i]t is not up to El Camino Hospital to

22  decide which documents are necessary."  Id. Ex. D.  The Trustees consistently provided only

23  non-explanation explanations.  These statements did not demonstrate in what way the

24  journals were relevant to and necessary for the audits, nor did they even attempt to do so.

25  The Court finds this behavior counterproductive and unprofessional.

26       The Trust Fund does acknowledge that it could have and should have been clearer in

27  explaining its position with respect to the cash disbursement journals and the subcontracting

28  provisions.  Trust Fund Supp. Memo (dkt. 39) at 8.  "Counsel to the Trust Fund apologizes to

4

**United States District Court**
For the Northern District of California

the Hospital and the Court for failing to provide a better explanation of the need for the cash disbursement journals and why the Trust Fund believed they were relevant and necessary to the audit of the Hospital's books and records." Id. at 8-9. The Trust Fund then seemed to backpedal on this apology at the hearing before finally deciding to take responsibility. The Court would like to underscore that while it ultimately determines the balance of factors does not tip strongly in favor of fees, the Trust Fund's behavior and in particular, counsel's conduct, in this regard is inappropriate. The Court would warn the Trust Fund and its counsel that a repeat of such behavior would likely be grounds for a determination of bad faith.

The Trustees then finally stated to the Hospital – and argued to the Court – that the journals were needed to determine whether the Hospital was properly subcontracting work. See Jones Decl. ¶ 8 (stating she told the Hospital that the auditors needed the journals "in order to determine whether the Hospital was in compliance and not improperly subcontracting out work covered by the collective bargaining agreement"); Opp'n at 8. During the litigation on the issue, the Trust Fund provided an unclear and unsupported argument. See, e.g. Opp'n at 10. The Trust Fund now argues their dispute with the Hospital simply reveals a disagreement over the meaning of the documents, not a demonstration of bad faith. They state their position was not "grossly unfair." Operating Engineers Pension Trust v. Gilliam, 737 F.2d 1501, 1506 (9th Cir. 1990).

In their Supplemental Memo, the Trust Fund presents the briefing it should have presented at the merits stage. It provides more support and explanation for its argument that the CBA covers types of work, rather than types of workers, see Supp. Memo at 4, and further explanation of why it does not find the subcontracting provision to be an expansive exception, Supp. Memo at 5-6 (discussing principles of exclusionary lists and ambiguous lists in contract interpretation). For example, the Trust Fund now points to the fact that the CBA sets out the job duties and types of work performed by each engineer as set forth in each of the engineer's classifications, providing some support for the argument that the CBA covered types of work performed, rather than types of workers. Amar Decl. Ex. B § II.1-8.

United States District Court
For the Northern District of California

1    While this does not change the Court's view, it is unclear why they did not make this

2    argument on the merits briefing.  Still, it does seem to demonstrate the Trust Fund was not

3    operating completely from a place of bad faith.[1]  Overall, the Court does not think this

4    conduct, while unprofessional, rises to the level of bad faith.

5         **B.**     **Factor 3 – Deterrence**

6         The Hospital argues an award of fees because would deter future tenuous claims by

7    employee trusts.  See Paddack, 783 F.2d at 847 (concluding an award would "discourage

8    trustees from asserting and possibly fabricating, claims with no basis in law or fact").  The

9    Hospital argues the Trust Fund's position that the auditors require cash disbursement journals

10    of "all" employers and the fact that the auditors wrote a blanket form letter to the Hospital

11    that included requests that were inapplicable to the Hospital suggest that the Fund initiated

12    this litigation in an effort to bully the Hospital into complying with an unduly over broad

13    request.  Amar Decl. ¶ 5, Ramsell Decl. ¶ 3.

14         The Trust Fund argues this case is not analogous to Paddack, where the fund expressly

15    instructed the auditor to base his report in part on work performed outside the jurisdiction

16    covered by the CBA.  It is true that there is not direct evidence of such an action by the Fund

17    here.  Still, the Fund did attempt to gather large amounts of information without regard to the

18    specific situation of the employer at issue, as demonstrated both by the form letter from the

19    auditors and the fact that the auditors planned to receive all the cash disbursement journals

20    before ever turning to the CBAs to determine what and who were actually covered by the

21    plan.  The Trust Fund's further explanation of their reasoning, discussed in the bad faith

22    section, does show though that they believe they often may have a legal basis for such

23    requests.  Thus, fees may not serve as a deterrent when they have a fiduciary duty to uphold

24    the agreements as they interpret them.  This factor is indeterminate.

25         **C.**     **Factor 4 – Benefit to Participants or Significant Legal Question**

26         The Hospital argues the fourth factor weighs in its favor because deterring baseless

27    litigation by the Fund benefits all plan participants by saving litigation fees.  The Trust Fund

28

---

[1] The Parties agree the second factor is not at issue here.

1   argues that they are seeking to reveal whether additional contributions are owed to the Fund

2   for covered work, which benefits the participants.  This prong does not point strongly in

3   either direction, and is not decisive

4           **D.      Factor 5 – Relative Merits**

5           The Hospital argues the fifth factor supports attorneys' fees because Trustees' position

6   was untenable given the clear language of the CBA permitting subcontracting and not

7   requiring contributions for work by subcontractors.  The Trustees argue in response that their

8   position is clearly supported by the audit provisions of the Trust Agreement.  As discussed

9   above, there is some textual support for the Trustees' position in the Agreement.  Again, they

10  have now provided more support in the case law and from the documents for their position as

11  well.  Thus, while the Court determined that the relative merits were in favor of the Hospital,

12  the Trust Fund's supplemental papers help demonstrate that did not have a completely and

13  totally untenable position.  Thus, this factor ends up neutral.

14          Overall this is a close question.  The Court is troubled by the Trust Fund's failure to

15  provide a coherent and timely explanation for their requests, both to the Hospital and the

16  Court.  Yet, while poorly litigated, the Court is not convinced the Trust Fund acted

17  completely in bad faith.  Given all the factors, the Court denies the motion for fees.

18  **IV.    CONCLUSION**

19          For the foregoing reasons, the Court DENIES the motion for attorneys' fees.

20          **IT IS SO ORDERED.**

21

22

23  Dated: April 11, 2012                          _____
                                                   CHARLES  R. BREYER
24                                                 UNITED STATES DISTRICT JUDGE

25

26

27

28